UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81082-CIV-COHN/SELTZER

MORRIS McDANIEL,

      Plaintiff,

vs.

RIC BRADSHAW, as Sheriff of Palm
Beach County, Florida and the CITY
OF BOYNTON BEACH, as Boynton
Beach Police Department,

      Defendants.

_____/

## ORDER ON VARIOUS DISCOVERY MOTIONS RELATING TO DEPOSITIONS

      THIS CAUSE is before the Court on the following motions filed by Defendants. The motions having been fully briefed and the Court being sufficiently advised, it is hereby ORDERED as follows for the reasons set forth below:

      1.    Defendant, Ric L. Bradshaw's, Motion for Sanctions (DE 55) is GRANTED in part and DENIED in part;

      2.    Defendant, City of Boynton Beach's, Motions for Sanctions (DE 59) is GRANTED in part and DENIED in part;

      3.    Defendant, Ric L. Bradshaw's, Motion for Protective Order (DE 54) is DENIED; and

      4.    Defendant, Ric L. Bradshaw's, Amended Motion for Protective Order (DE 61) is DENIED.

<u>MOTIONS FOR SANCTIONS</u>

This action arises out of the May 4, 2008 detention and arrest of Plaintiff Morris McDaniel by officers of the Boynton Beach Police Department, after he was stopped and detained by the Palm Beach Sheriff's Office.  Plaintiff alleges that he was arrested for simple battery (a misdemeanor) by the Boynton Beach Police, despite the arrest occurring outside the City of Boynton Beach.  According to Plaintiff, the alleged battery did not occur within the presence of the Boynton Beach Police (or any other law enforcement personnel) and they were not in fresh pursuit; therefore, the Boynton Beach Police lacked probable cause to arrest him.  Plaintiff asserts claims against Ric L. Bradshaw, as Sheriff of Palm Beach County ("PBCSO"), and the City of Boynton Beach, as Boynton Beach Police Department (the "City") for violation of his civil rights under § 1983, as well as state law claims for false arrest (against both Defendants), and conversion and civil theft (against the City).  The trial  is now set for the two-week trial period commencing August 1, 2011.

The City noticed Plaintiff's deposition for April 7, 2011;[1] prior to the deposition, Plaintiff's counsel informed the City that Plaintiff would not be available that day due to employment obligations.  The City then moved the District Court for a one-week extension of the discovery deadline so that it could take Plaintiff's deposition (DE 35); the Court granted the request, requiring that Plaintiff's deposition be completed by April 15, 2011 (DE 38).  Plaintiff's deposition was re-set for April 14, 2011.  On April 9, 2011, Plaintiff filed a Motion to Extend Deadlines (DE 37), requesting a 45-day extension of all pretrial

---

[1]  According to Plaintiff, Defendants had previously scheduled his deposition for March 8, 2011, but had canceled the deposition because they had received Plaintiff's answers to interrogatories only a few days before.  <u>See</u> Plaintiff's Emergency Motion for Protective Order (DE 39).

deadlines.   And on April 13, 2011 – one day before his re-scheduled deposition date –
Plaintiff filed an Emergency Motion for Protective Order (DE 39), requesting that he not be
deposed on April 14 due to employment obligations.   Thereafter, the District Court, *inter
alia*, granted a four-week extension of all pretrial deadlines, making the new discovery
deadline May 13, 2011; the Court also granted Plaintiff's motion for protective order (DE
42).   Thereafter, the City re-set Plaintiff's deposition for May 4, 2011.  Defendant PBCSO
cross-noticed the videotaped deposition of Plaintiff.

On May 3, 2011, Plaintiff filed a Second Motion for Protective Order and Second
Motion to Extend the Deadlines (DE 51 and 52),[2] seeking to postpone his deposition
(scheduled for the following day).  Plaintiff contended that "[p]art of [his] testimony [would]
hinge[ ] on [his] understanding of mutual aid agreements[3] and whether such an agreement
was in place between PBCSO and Boynton Police."[4]  Motion at 1 (DE 52).  Plaintiff was
concerned that his "testimony might be considered perjury if based on inapplicable copies
of the mutual aid agreement between PBCSO and Boynton Police."  Id. at 1-2.  Although
Defendants had produced copies of mutual aid agreements, Plaintiff did not believe that
they had produced the mutual aid agreement that was in place on May 4, 2008, the date

---

[2]  The Motions docketed as Entry 51 and Entry 52 appear identical except that
Docket Entry 51 has the exhibits attached separately.

[3]  A mutual aid agreement is a "voluntary cooperation written agreement between
two or more law enforcement agencies, which agreement permits voluntary cooperation
and assistance of a routine law enforcement nature across jurisdictional lines" or a
"requested operational assistance written agreement between two or more law
enforcement agencies, which agreement is for the rendering of assistance in a law
enforcement emergency" or a "combination of both."  Fla. Stat. § 23.1225(1)(a)(b) and (c).

[4]  Plaintiff contends that the legality of his arrest is dependent on the existence and
validity of a mutual aid agreement.

of his arrest; this belief arose from what Plaintiff perceived as discrepancies on the signature pages.  Plaintiff also again sought to extend the pretrial deadlines, including the May 13, 2011 discovery deadline, for an additional 45 days to afford him an opportunity to file a motion to compel Defendants to produce an "uncompromised" copy of the mutual aid agreement and to permit him to subpoena the Florida Department of Law Enforcement ("FDLE") to obtain a copy of the agreement filed with that agency and compare the two copies.

On May 3, 2011, this Court denied Plaintiff's request to postpone his May 4 deposition, stating that Plaintiff would have an opportunity to explain or qualify any testimony concerning mutual aid agreements.   In his Motion, Plaintiff acknowledged that on April 25, 2011, Defendants had produced what was purported to be a fully executed copy of the mutual aid agreement in effect on May 4, 2008 (the date of Plaintiff's arrest). In order to prevent further delay and to allay Plaintiff's concern as to the authenticity of this agreement, the Court *sua sponte* required Defendants to state on the record "whether the mutual aid agreement produced on April 25, 2011, is a complete and accurate copy of the mutual aid agreement in effect on May 4, 2008 and explain any discrepancies in the signature pages."  Order at 2 (DE 53).  In the event the  agreement produced on April 25 was not a complete and accurate copy of the mutual aid agreement in effect on the day of Plaintiff's arrest, Defendants were to produce a complete and accurate copy before Plaintiff began his testimony.  Id.  This Court also denied Plaintiff's request to extend the pretrial deadlines, but permitted him to renew the motion, if necessary, after he completed his deposition.

Plaintiff's deposition commenced on May 4, 2011, at which time PBCSO's counsel

4

confirmed that the mutual aid agreement produced to Plaintiff on April 25, 2011 is a complete and accurate copy of the mutual aid agreement in effect at the time of Plaintiff's arrest; she also explained the perceived discrepancies in the signature pages.  See McDaniel Dep. at  4-6 (DE 55-2).  Following PBCSO's counsel's statement, Plaintiff's counsel inquired whether the copy of the mutual aid agreement produced on April 25 is the same agreement filed with the FDLE.  PBCSO's counsel responded:  "That's not anything I have to deal with at this deposition.  I'm not here to be questioned.  I'm here to ask questions and comply with the court order and I've just complied with it in full." Id. at 7 (DE 55-2).  When Plaintiff's counsel's made the same inquiry again, counsel responded: "It's the copy that was in effect on May 4, 2008.  That's what I have been ordered to do, we did it.  It was provided to you on April 25, 2011."  Id.

PBCSO's counsel then asked Plaintiff to state his name.  Plaintiff did so, then asked to speak to his attorney to clarify PBCSO's counsel's statement regarding the mutual aid agreement.   Thereafter, Plaintiff made the following statement:

> I'm pretty certain – I'm a literate person and what I read here it says if the agreement is not complete and accurate the Defendant shall produce to the Plaintiff before his testimony [a] complete and accurate copy of the agreement in effect and according to what was in effect on May 4, 2008 the agreement to the statute the complete and accurate copy has to be the copy from the Florida Department of Law Enforcement that's on file. I want to see that copy. When I read the Judge's order that's basically what it says so I'm asking for that copy to be produced because you referred to the criminal Justice Standards Training Commission hearing.  That's a different one that was produced there and I was told and that hearing that was the one that was in effect by sworn testimony under oath. So that's different from what you produced. So it hasn't been made clear to me which one was in effect because neither one is on the record with the Florida Department of Law Enforcement.  So according to the Judge's order I have

not been made, not Mr. Locke . . . .

Id. at 8 (DE 55-2).  PBCSO's counsel responded:

> Are you adjourning the deposition?  You do so at your peril.
> I've complied with this order.  That's all I have to comply with.
> I have told you that what was produced to you on April 25,
> 2011 is a complete and accurate copy of the mutual aid
> agreement in effect on May 4, 2008.  I'm not here to be
> interrogated by your client.  So we either proceed with the
> deposition or you adjourn it.  It's your decision.

Id. at 8-9.

After Plaintiff and his attorney had conferred, Plaintiff's attorney made the following

statement on the record:

> My client has read the same order that we received yesterday
> from Judge Seltzer and he has seen two to three different
> copies of the mutual aid agreement produced by the Sheriff's
> Office.  And so in reading the order and looking for a true and
> accurate copy he is looking for the copy that legally should be
> filed with the FDLE.  That was what he expected actually
> today.  And that's what – well, that's what he believes that he
> had to have before he gives a statement pursuant to Judge
> Seltzer's order.  That's it.
>
> * * *
>
> Mr. McDaniel is not going to answer questions without having
> a copy of the mutual aid agreement on file with the FDLE.

Id. at 10.  Plaintiff and his attorney then left the deposition, and the instant Motions for

Sanctions ensued.

Defendants now move the Court, pursuant to Federal Rules of Civil Procedure 37

and 30,[5] to impose sanctions against Plaintiff, including dismissal of this action, for refusing

---

[5]  Rule 37(b)(2)(A)(v) authorizes a court to dismiss an action as a sanction for not
obeying an order to provide or permit discovery.  (This Court's May 3, 2011Order denying
Plaintiff's Second Emergency Motion required Plaintiff to attend his May 4, 2011

to testify at his May 4, 2011 deposition.  This Court recently had occasion to discuss the

law applicable to the dismissal of an action for a discovery violation:

> Pursuant to Federal Rule of Civil Procedure 37(d), a court may
> impose sanctions (including dismissing claims) on a party who
> fails to attend his properly noticed deposition.  Because
> dismissal is a severe penalty, however, a case may be
> dismissed with prejudice only where there is a "clear record of
> delay or willful contempt and a finding that lesser sanctions
> would not suffice."  Jones v. Graham, 709 F.2d 1457, 1458
> (11th Cir. 1983); see also Navarro v. Cohan, 856 F.2d 141,
> 142 (11th Cir. 1988) ("The sanction of dismissal is an extreme
> remedy and should not be imposed if lesser sanctions will
> suffice."); In re Polypropylene Carpet Antitrust Litig., 181
> F.R.D. 680, 696 (N.D. Ga. 1998) ("The decision to dismiss a
> claim . . . 'ought to be a last resort – ordered only if non-
> compliance with discovery orders is due to willful or bad faith
> disregard of those orders.'") (quoting Cox v. American Cast
> Iron Pipe Co., 784 F.2d 1546, 1556 (11th Cir. 1986)).

Santana v. Ruth's Chris Steakhouse, No. 10-61376, 2011 U.S. Dist. LEXIS 21758, at *14

(S.D. Fla. February 18, 2011) (Seltzer, M.J.).

       Here, Plaintiff's sole justification for his refusal to testify is that it was the

Defendants' fault.  He argues that "PBCSO was the cause of [his] May 4, 2011, deposition

being adjourned" and "Boynton Police could have resolved the ambiguity regarding the

mutual aid agreement, thereby enabling [his] deposition to proceed, but chose to remain

silent."  Response at 1 (DE 66).  Plaintiff contends that "his deposition would have

proceeded had PBCSO confirmed that the version of the mutual aid agreement that was

served by PBCSO on April 25, 2011, was in fact the version on file with the Florida

---

deposition; implicit in that Order was a requirement that he testify.).  And Rule 30(d)
authorizes a court to  impose appropriate sanctions, including reasonable expenses and
attorney's fees, "on  a person who impedes, delays, or frustrates the fair examination of
the deponent."  Fed. R. Civ. P. 30(d)(2).

Department of Law Enforcement as required by Florida law or, in the alternative, had Boynton Police chimed in to resolve the ambiguity." Id. at 8.   According to Plaintiff, Defendants "were to represent whether the copy of the mutual agreement produced by PBCSO on April 25, 2011, was **on file with the FDLE** to comply with the May 3, 2011 Order." Id. at 4 (emphasis in original).   Plaintiff further argues that "rather than either defendant resolv[ing] the ambiguity regarding the mutual aid agreement produced by PBCSO on April 25, 2011, so that [he] could proceed, PBCSO *attempted* to bully [him] into being deposed despite the Court's clear and concise requirement and either its inability or refusal to comply . . . ." Id. at 4 (emphasis in original).

Plaintiff's argument is correct in only one respect – the Court's Order is "clear and concise."  The May 3, 2011 Order required Defendants to "state on the record whether the mutual aid agreement produced on April 25, 2011, is a complete and accurate copy of the mutual aid agreement in effect on May 4, 2008 and explain any discrepancies in the signature pages."[6]  Order at 2 (DE 53).  PBCSO's counsel did precisely that; this Court's Order required no more.  Nothing in the May 3, 2011 Order even suggests that Defendants were to produce a copy of the mutual aid agreement filed with the FDLE.  The Court recognizes that had PBCSO's counsel simply responded to Plaintiff's inquiry as to whether the agreement previously produced to Plaintiff (on April 25) was the same as that filed with

---

[6]  Plaintiff appears to mistakenly focus on the Court's underline alternative directive that "[i]f the agreement is not a complete and accurate copy, Defendants shall produce to Plaintiff before his testimony a complete and accurate copy of the agreement in effect on May 4, 2008." Order at 2 (DE 53).  PBCSO, however, is correct that this component of the Court's Order would have been "triggered only if Defendants [had not] stated on the record that the Mutual Aid Agreement was a complete and accurate copy." Motion at 6 (DE 55).

the FDLE,[7] the time and expense incurred by the parties, and the judicial resources expended, may very well have been avoided.  But Defendants' counsel had no obligation to do so.  Plaintiff, however, did have an obligation to testify at his deposition. This Court will not permit Plaintiff to shift the blame to Defendants for his own improper termination of the deposition.[8]  Plaintiff's misinterpretation of the Court's Order does not justify his conduct.  The Court, therefore, will impose sanctions.  The Court, however, does not find that the harsh remedy of dismissal is warranted; lesser sanctions will suffice.[9]  Accordingly, it is hereby ORDERED as follows:

1.      Within 90 days of the date of this Order, Plaintiff shall pay $300 to each to Defendant to defray the attorney's fees incurred in attending Plaintiff's May 4, 2011 deposition and in bringing the instant sanctions motions;

2.      Within 90 days of the date of this Order, Plaintiff shall reimburse Defendants for the court reporter's fee (but not the videographer's fee) incurred for the (aborted) May 4, 2011 deposition, including the cost of one deposition transcript;[10]

---

[7]  In its sanctions motion, PBSCO acknowledges that the copy of the mutual aid agreement it produced to Plaintiff on April 25, 2011, is, in fact, the same as the agreement filed with the FDLE.  Motion at 2 (DE 55).

[8]   Federal Rule of Civil Procedure 30(d) permits a deponent or party to suspend a deposition for the time necessary to obtain an order "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."  Fed. R. Civ. P. 30(d)(3)(A).  Plaintiff here did not avail himself of this procedure; instead, he simply refused to testify and ended the deposition.

[9]  Plaintiff is cautioned that any further failure to testify at (and complete) his rescheduled deposition may result in dismissal of his claims.

[10]  The court reporter's fee shall be paid to the Defendant who actually incurred the expense.  If this fee was shared by Defendants, the amount shall be paid one-half to each Defendant.  As each Defendant ordered a transcript, that cost shall also be paid one-half

3.      Plaintiff shall attend <u>and testify</u> at a deposition to be re-set by Defendants (for a mutually convenient date and time); the deposition must be completed no later than May 31, 2011; and

4.      Plaintiff shall not be permitted to take any depositions until he completes his deposition.

<u>MOTIONS FOR PROTECTIVE ORDER</u>

Defendant Sheriff Bradshaw has moved the Court for a protective order to preclude Plaintiff from taking the depositions of Sgt Ulrich Naujoks, Leslie Shriberg, John Navarro, Mark Halperin, Mike Gauger, and Brent Coombs.  Defendant argues that "in the interest of justice" these depositions should not proceed because Plaintiff improperly terminated his deposition.  The Court does not find this sufficient reason to preclude the depositions set by Plaintiff,[11] given that this Court has required Plaintiff to testify at his deposition and has imposed sanctions for the improper termination and given that the District Judge has again extended the discovery deadline.[12]   Accordingly, Defendant, Ric L. Bradshaw's, Motion for Protective Order (DE 54) and Amended Motion for Protective Order (DE 61) is

_____

to each Defendant.

[11]  Any subpoenas issued by Plaintiff for these depositions shall remain in full force and effect.

[12]  On May 12, 2011, the District Court extended the pretrial deadlines (DE 68); the discovery deadline is now June 10, 2011.  THE PARTIES AND THEIR COUNSEL SHALL COOPERATE FULLY IN SCHEDULING AND COMPLETING ALL DEPOSITIONS BEFORE THE DISCOVERY DEADLINE.

DENIED.

DONE AND ORDERED in Fort Lauderdale, Florida, this 23th day of May 2011.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record