UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81082-CIV-COHN/Seltzer

MORRIS McDANIEL,

                Plaintiff,

vs.

RIC L. BRADSHAW, as Sheriff of Palm
Beach County and the CITY OF
BOYNTON BEACH, as Boynton Beach
Police Department,

                Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

        **THIS CAUSE** came before the Court on Defendant City of Boynton Beach's

Motion for Summary Judgment [DE 122], Sheriff Ric Bradshaw's Motion for Summary

Judgment [DE 126], Plaintiff's Motion for Partial Summary Judgment [DE 128], the City

of Boynton Beach's Motion for Leave to Amend or Correct its Motion for Summary

Judgment [DE 147], and Plaintiff's Motions for Sanctions [DE's 143, 144, and 145].

The Court has carefully considered the motions, responses and replies, and is

otherwise fully advised in the premises.

**I.  BACKGROUND**

        Plaintiff Morris McDaniel filed this action against Defendant Ric Bradshaw, as

Sheriff of Palm Beach County ("PBSO" or "Sheriff's Office"), and Defendant City of

Boynton Beach, Florida ("City"), based upon Mr. McDaniel's ("Plaintiff") arrest on May 4,

2008.  After the Court granted in part PBSO's motions to dismiss two of the first three

versions of Plaintiff's claims [DE's 13 and 38], the Third Amended Complaint includes

claims under Section 1983 against PBSO (Count I) and against the City (Count II), state

law claims for false arrest (Counts III and IV), conversion (Count V), and civil theft (Count VI).  The case proceeded through discovery, resulting in the present motions for summary judgment by all three parties.

On May 4, 2008, Plaintiff was detained by the PBSO and then arrested by officers of the Boynton Beach Police Department for simple domestic battery.  The arrest followed a series of events beginning with an argument between Plaintiff, a then off-duty sheriff's deputy, and his wife, Gena Rowlands, also an employee of the Sheriff's Department.  The argument started first at their home and then continued at a pool in their residential community within the City of Boynton Beach.  Deposition of Gena Rowlands at 10-14 [DE 124-25], adopting statement given to police [DE 124-4]. Rowlands testified that Plaintiff had put his hands around her neck, choked her and threatened to kill her.  Rowlands deposition at 20-21.  Plaintiff testified in his deposition that there was no argument, that Plaintiff was attempting to discuss with Rowlands her dropping of a divorce action and rumors of her affair with a lieutenant at PBSO.  After she ignored his questions, however, he "grabbed her, put my hands on her [shoulders] and turned her toward me to look at me because she wouldn't look at me."  Deposition of Morris McDaniel [DE 130-1, p.108, 111-12 of 160].

Rowlands testified that Plaintiff left the pool area in his vehicle, with one of their children, and proceeded home.  Rowlands deposition at 15.  After he discovered that he did not have a house key with him, he demanded Rowlands bring him a key.  Id. Rowlands brought a spare key and Plaintiff again threatened her and told her not to leave.  Id.  Rowlands drove off with one son and called a PBSO co-worker, Leslie Shriberg, because she was  concerned for her other son's safety.  Id. at 16.  Rowlands

was very upset and met up with Shriberg at a Walgreen's parking lot outside the City

limits.  Id. at 17.  Before meeting Rowlands, Shriberg had called an off-duty PBSO

captain because she needed advice on what to do for Rowlands.  Transcript of

Injunction for Protection Against Domestic Violence Hearing at 57 [DE 135-1].[1]  Shriberg

testified that after this captain called 911, she did as well.  Id. at 59-60.  She met

Rowlands at a Walgreen's outside the city limits of Boynton Beach.

 Plaintiff's version of what transpired is different.  After he placed his hands on her

shoulders, Rowlands removed his hands, got up and left the pool area, without

answering his questions.  McDaniel Deposition at 112.  Plaintiff also left the pool area,

got into his vehicle, drove home, but stayed in his car waiting for his wife and kids, and

when they did not arrive, drove back to the pool area.  Id. at 120-22.  Plaintiff found his

wife and kids sitting in their car, asked if they were coming home, and then both vehicles

drove back to the home.  Id. at 122-23.  Plaintiff walked into the house, followed by one

of his sons.  Id.  Plaintiff made dinner for himself and his son, left some food for his other

son, took a shower, and got his son ready for bed.  Id. at 124-25.  Plaintiff's wife

apparently had still not entered the house, so Plaintiff called his wife to see when she

was coming home, as Plaintiff was planning to leave for the night and could not leave

their son unattended.  Id. at 128.  Rowlands eventually answered his call and agreed to

meet Plaintiff at Walgreen's. Id. at 130.  Plaintiff disputes that a 911 call was ever made.

 Upon arriving at Walgreen's, Plaintiff drove next to his wife's car, but upon

noticing Leslie Shriberg standing nearby talking on her cell phone, drove to a parking

---

[1]  The Court notes that the name of witness Leslie Shriberg is redacted from the
transcript of the state court domestic violence injunction hearing, but all parties cite this
testimony as that of Leslie Shriberg.

spot nearby.  Id. at 132-22.  Plaintiff thought it was odd that Shriberg was there so he waited in his vehicle with one son to see what was going to happen.  Id. at 133.  Other than the fact that Shriberg was Sheriff Ric Bradshaw's campaign manager and that it was known that Shriberg and Bradshaw communicated after hours, Plaintiff testified that he had no further knowledge of the extent of a "personal relationship" between them.  McDaniel Deposition, Volume II [DE 130-2, p. 77-78 of 122].

A short time later, PBSO patrol cars arrived.  McDaniel Deposition, Volume I at 146-47.  Plaintiff exited his vehicle, standing at the back of his truck, as PBSO Sergeant Navarro approached to confirm his identify.  Id. at 148.  Plaintiff testified that Navarro said he did not know what was going on.  When Plaintiff asked to leave, Navarro told him that he was giving him a verbal order not to leave, that he was being held for the Boynton Beach Police, but he did not know why.  Id. at 149.  Plaintiff stated that he was not handcuffed because Navarro and Sergeant Wright (also of PBSO) knew his son was in the car.  Id. at 152.

Some time after Navarro arrived at the parking lot, a Boynton Beach police officer, Vincent Brooks, arrived at the scene.  McDaniel Deposition, Volume II at 5.  Brooks asked Plaintiff why he told his son not to talk to the police.  Id. at 6-7.  Brooks then left Plaintiff to talk to Rowlands and the children, and came back a short time later to arrest Plaintiff for simple battery.  Id. at 8-9; Deposition of Vincent Brooks at 7-8 [DE 138/140].  Brooks testified that he was directed to the scene by his sergeant to investigate a domestic dispute that had originated within the City of Boynton Beach.  Brooks Deposition at 6, 10.  Sergeant Steve Wessondorf testified that the City had been contacted by Palm Beach Sheriff's Office to respond to a domestic case that had

occurred within the city limits that involved a PBSO deputy.  Deposition of Steve

Wessendorf at 7-8 [DE 137].  Wessendorf advised Brooks on the way to the scene of

this information.  Id. at 9.  When he arrived, Brooks testified that he first approached

Rowlands, who told him that after a lengthy argument with Plaintiff, Plaintiff had placed

his hands around her throat.  Brooks Deposition at 13-14.[2]  Brooks went back and forth

between Rowlands and Plaintiff, with Plaintiff denying touching Rowlands.  Id. at 14-15.

Brooks interviewed both children, although his supervisor, Sergeant Wessendorf, also

spoke to the older son, who would not tell Brooks anything.  Id. at 15, 18; McDaniel

Deposition, Volume II at 9-10.  The older son told Wessendorf that his mommy and

daddy were fighting and they touched each other, and that his father choked his mother.

Wessendorf deposition at 14.  The allegation that Plaintiff had laid hands on Rowlands

causing redness was verified by at least one of the children, so after consulting

Wessendorf, Brooks arrested Plaintiff for simple domestic battery, believing he had no

choice under Florida law.  Brooks deposition at 15, 19 and 28.  Brooks testified that he

did not have any contact with PBSO deputies before he arrived on the scene.  Id. at 22.

After Plaintiff was arrested by Brooks, he was transported to the police station, where he

spent the night in jail and bonded out the next morning.  On May 21, 2008, the State

Attorney's office declined to file criminal charges for domestic battery [DE 124-8].

Plaintiff testified that he had a prior incident earlier that year with Wessendorf

when Plaintiff had called 911 to report a road rage incident where after honking at

Plaintiff, a woman had exited her vehicle, walked to Plaintiff's vehicle, and pointed her

---

[2]   Rowlands' written statement taken by Brooks on May 4, 2008, further details
Plaintiff's alleged battery [DE 167-2].

finger into his car at his face.  McDaniel Deposition, Volume II at 11-13; Wessendorf

Deposition at 6.  Wessendorf refused to charge the woman, despite Plaintiff's insistence,

and despite Plaintiff pointing out that if the roles were reversed, i.e. a black man pointing

his finger inside the vehicle at a white female driver, then the man would be arrested.

McDaniel Deposition, Volume II at 14.

As to the facts related to Plaintiff's claims for conversion and theft, Plaintiff owned

several guns, which were confiscated from the house where he lived with Rowlands,

after a state court entered a domestic violence injunction against Plaintiff on May 21,

2008.  Final Judgment of Injunction for Protection Against Domestic Violence [DE 124-

7].  The guns were initially placed in the property room of the Boynton Beach police, but

on July 22, 2008, were given to the Palm Beach County Sheriff's Office pursuant to

policy.  Id. at 24-26; Deposition of Chief Matthew Immler at p. 17 of 55 [DE 133-1]; Letter

from William Mann, Evidence Custodian, Boynton Beach Police Department [DE 124-

17]. Plaintiff did not receive any notice from the City regarding his property, nor did he

receive a property receipt for the guns from PBSO, and therefore believed he could not

retrieve the guns from the PBSO, though he did not attempt to do so.  McDaniel

Deposition, Volume II at 31-32, 101.  The record indicates that the guns may still be at

the PBSO.

## II. DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to a judgment as a

matter of law."   Fed. R. Civ. P. 56(a).  The movant "always bears the initial responsibility

of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### B.  Federal Civil Rights Claims

Defendants each move for summary judgment as to Counts I and II of the Third Amended Complaint, asserting that Plaintiff has failed to show that a municipal policy

directly caused a constitutional violation under § 1983.  Plaintiff moves for partial

summary judgment in his favor on Counts I and II, asserting that the mutual aid

agreement between the City and PBSO was not in effect, or if in effect, was not followed

by Defendants, thus making his arrest unlawful.

A municipality cannot be held liable under § 1983 for the acts of its employees on

a theory of respondeat superior.  Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th

Cir. 1997); Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1116 (11th Cir. 2005) (citing

Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978)).

Rather, a municipality bears liability under § 1983 only where the challenged action

implements or executes a municipal policy or custom.  Scala, 116 F.3d at 1399 (citing

Monell, 436 U.S. at 694).

> [I]t is when execution of a government's policy or custom, whether made
> by its lawmakers or by those whose edicts or acts may fairly be said to
> represent official policy, inflicts the injury that the government as an entity
> is responsible under § 1983.

Monell, 436 U.S. at 694.  To recover damages under § 1983, a plaintiff must show:

"(1) that [his] constitutional rights were violated; (2) that the municipality had a custom or

policy that constituted deliberate indifference to that constitutional right; and (3) that the

policy or custom caused the violation."  Bankshot Billiards, Inc. v. City of Ocala, 634 F.3d

1340, 1349 (11th Cir. 2011) (quoting McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir.

2004).

### 1.  City of Boynton Beach

The only policy that Plaintiff asserts resulted in a civil rights violation is that the

City lacked authority under the mutual aid agreement to arrest Plaintiff outside the City

limits because of the alleged invalidity of the mutual aid agreement in effect on May 4,

2008.  It is paramount to begin by stating that an arrest in violation of state law does not create a federal constitutional rights violation.  Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002).  Plaintiff devotes many pages of his submissions arguing that the mutual aid agreement was not valid because all proper signatures were not obtained and submitted to the State of Florida within the time prescribed by state law.[3]  The Court will not decide this state law issue as it is not necessary to resolve the present claims.  It is without dispute that both the City, from Chief Immler on down to Officer Brooks, and the State of Florida *believed* a valid mutual aid agreement existed on May 4, 2008 when Brooks responded to the request for assistance from the Palm Beach Sheriff's Office.  Deposition of Chief Matthew Immler at 6 [DE 133-1]; Deposition of Vincent Brooks at 9 [DE 138/140]; Unsworn Declaration Under Penalty of Perjury of Walt Turner, Mutual Aid Coordinator, Florida Department of Law Enforcement [DE 134-1].  Whether the policy was in fact valid or not under the technicalities of Florida law, an officer who otherwise has probable cause and reasonably believes that he has the authority to make an arrest, does not violate the federal constitutional rights of an arrestee if it later turns out that the mutual aid agreement was invalid at that time.

Given the undisputed record evidence that the City's police department believed they were in compliance with state law, a jury could not conclude that the City had a custom or policy that constituted deliberate indifference to the right not to be falsely arrested.   A related argument put forth by Defendants is that the mutual aid policy did

---

[3]  These issues include whether the required signature from a city is that of a mayor/manager or the police chief of that city's police department, and what date to count from the last required signature to receipt by the State of Florida.  See Fla. Stat. § 23.1225.

not cause Plaintiff's alleged false arrest.  The Court agrees.  Plaintiff's argument is too simplistic – because the policy was invalid, therefore all arrests made pursuant to the policy were federal constitutional violations.  Plaintiff does not cite to any federal appellate decisions adopting this view of § 1983 false arrest claims.  Instead, most of Plaintiff's case citations are from state decisions that suppressed evidence in criminal cases for violations of a mutual aid agreement.  Such results are appropriate – however, suppression of evidence in a state court criminal matter does not equate to a §1983 federal constitutional violation.[4]

The City also correctly argues that regardless of the terms of the mutual aid agreement or whether an officer can arrest someone for a misdemeanor under Florida law, probable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest.  Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998); Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996).   Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed...an offense."  Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995).  "The arresting officer need not actually see the law being violated, nor must he satisfy himself beyond any question that a crime has been committed."  State v. Keen, 384 So. 2d 284, 286 (Fla. Dist. Ct. App. 1980).

---

[4]  Plaintiff also asserts that even if the mutual aid agreement was valid, that Officer Brooks had no authority to leave his jurisdiction to begin an investigation outside his jurisdiction.  Again, even if this action by Brooks somehow violated state law, there is no federal constitutional violation.  Knight, 300 F.3d at 1276.

In this case, there is no genuine issue of material fact that Rowlands told Officer Brooks that Plaintiff had choked her. There is also no genuine issue of material fact that the children corroborated at least part of Rowlands' account of the incident. Plaintiff may strenuously disagree with Rowlands' version of the facts, but he did not hear the conversations between Brooks, Rowlands, and his children. Based upon the evidence in the record, the Court finds as a matter of law that Brooks had probable cause to arrest Plaintiff. Thus, even if Plaintiff could meet the elements for municipal liability under § 1983, summary judgment would be appropriate on Count II because probable cause existed to support his arrest.[5]

### 2.  Palm Beach Sheriff's Office

Plaintiff contends that the PBSO violated his constitutional rights in detaining him without cause while waiting for City police to arrive, and in assisting in his arrest. Plaintiff's testimony does create a factual issue as to whether the PBSO deputy at the scene assisted in handcuffing Plaintiff. However, such a factual dispute is not material to this legal analysis, as probable cause existed for the arrest, as discussed in the prior section.

With regard to his claim that the PBSO illegally detained him, the fact that Plaintiff was a sheriff's deputy at the time distinguishes this case from most cases alleging false arrest. Although he did not know why he was detaining Plaintiff, PBSO Sergeant Navarro gave Plaintiff a verbal order not to leave the scene. Plaintiff contends that as an

---

[5]  Plaintiff also argues that the City's arrest was the "fruit" of an illegal detention by the PBSO. The problem with this argument is that the City did its own investigation at the scene after a request for assistance by PBSO. Officer Brooks determined probable cause existed and arrested Plaintiff for simple domestic battery. There is no federal constitutional violation under these circumstances.

off-duty officer he should have been free to leave the scene without fear of arrest.  The record is disputed as to whether anyone called 911, but regardless of how the order to detain McDaniel came down to Navarro, it is undisputed that someone called PBSO with a report of a possible domestic incident.   Upon receipt of a call regarding a domestic dispute, PBSO responded to a location within its jurisdiction, detained the suspect, and waited for the investigating agency to arrive, even though that investigation had not begun at that precise moment.  While the circumstances of the initial detention may be unusual because it may not have arisen from a 911 call, even resolving disputed facts in Plaintiff's favor, these actions do not comprise a federal constitutional violation.  More importantly, any initial problems with the detention were cured a short time later because probable cause existed for the arrest by the City, as described in the prior section. Therefore, summary judgment is appropriate as to Plaintiff's § 1983 claim in Count I against PBSO.

## C.  Florida Civil Rights Claims in Count III and IV

The tort of false arrest is defined as "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty."  Escambia County School Bd. v. Bragg, 680 So. 2d 571, 572 (Fla. Dist. Ct. App. 1996) (quoting Johnson v. Weiner, 19 So. 2d 699, 700 (Fla. 1944)).  Probable cause is an affirmative defense to a false arrest claim.  Mailly v. Jenne, 867 So. 2d 1250, 1251 (Fla. Dist. Ct. App. 2004).  As the Court discussed above, probable cause existed when Officer Brooks arrested Plaintiff.[6]  Thus, summary judgment is clearly

---

[6]  Under Florida law, a law enforcement officer may arrest a person without a warrant if he believes there is probable cause that the person committed battery upon another person, as defined in Fla. Stat. § 784.03.  See Fla. Stat. § 901.15(9)(a);

appropriate on the claim of false arrest against the City of Boynton Beach in Count IV.

To the extent, Plaintiff contends in Count III that PBSO assisted in the arrest by a deputy

helping Officer Brooks to handcuff Plaintiff, summary judgment is appropriate on that

claim as well.

Although not differentiated or explained in Count III of the Third Amended

Complaint, Plaintiff may also be asserting a false arrest claim against PBSO for his initial

detention by Sergeant Navarro at Walgreen's, prior to the arrival of Officer Brooks of the

City of Boynton Beach.  On this sub-claim, it is a closer question as to whether the

existence of probable cause an hour later is a complete defense to the initial detention.

Plaintiff has not cited to any cases that found that a false arrest claim can be maintained

when an individual is merely detained on scene while an officer waits for the

investigative agency to arrive.  At the time of this detention, the record is clear that the

PBSO had knowledge that there was a domestic disturbance in Boynton Beach and that

the parties involved were at a Walgreen's within PBSO jurisdiction.  Those details may

not have been provided to Sergeant Navarro when he arrived at Walgreen's.[7]  An officer

may act upon facts communicated to him by a responsible person.  State v. Keen, 384

So. at 286.  Under the totality of the circumstances, this Court concludes that under

Florida law, Navarro had a reasonable ground of suspicion to detain Plaintiff until

_____

Rodriguez v. State, 29 So. 3d 310, 313 n.5 (Fla. Dist. Ct. App. 2009).

[7]  It does not appear that Sergeant Navarro's deposition was taken in this matter.
In addition, whether the accusation of domestic violence reached PBSO command
officers, who in turn instructed Navarro, by 911 or through Leslie Shirberg's telephone
call to Captain Stringis is immaterial to whether probable cause existed for Plaintiff's
detention.

Boynton Beach could question him, Rowlands and the children.  Therefore, summary judgment on Plaintiff's claim for false arrest in favor of PBSO shall be entered.

### D.  Conversion and Civil Theft Claims Against City

The City also moves for summary judgment on Plaintiff's claims for conversion and civil theft of his personal property, which consisted primarily of firearms removed from Plaintiff's car and home.  The record is undisputed that the property was in the possession of the City after his arrest.  Following their standard procedure, after the criminal charges were not filed and sixty days had elapsed, the City transferred the property to the PBSO on July 22, 2008.  The elements of conversion in Florida as: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein."  Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co., 125 F.Supp.2d 1093, 1099-1100 (S.D. Fla. 2000) (citing Warshall v. Price, 629 So.2d 903, 904 (Fla. Dist. Ct. App. 1993), rev. den., 641 So.2d 1346 (Fla. 1994)).  Given the conclusion that probable cause existed for the arrest, and the undisputed record that an injunction for protection against domestic violence was entered against Plaintiff by a state court on May 21, 2008 (for a six month period) [DE 124-7], which prohibited Plaintiff from possessing any firearm except for work purposes, the initial taking of Plaintiff's guns was not wrongful under Florida law.  Plaintiff could not possess the guns pursuant to the injunction.  By the time Plaintiff attempted to retrieve the guns from the City, the City had transferred the guns to PBSO, due to the existence of a PBSO internal affairs investigation.  The undisputed facts lead to the conclusion that

the City never wrongfully asserted dominion over the property at issue.  Summary

Judgment on the conversion claim Count V in favor of the City is therefore appropriate.[8]

As for the civil theft claim asserted by Plaintiff in Count VI pursuant to Fla. Stat.

§ 772.11, Plaintiff must prove by clear and convincing evidence that he has been injured

by any violation of Florida's criminal theft statutes.  Fla. Stat. § 772.11(1).  The only

relevant section of those statutes is § 812.014, which states that:

> (1) A person commits theft if he or she knowingly obtains or uses, or
> endeavors to obtain or to use, the property of another with intent to, either
> temporarily or permanently:
> (a) Deprive the other person of a right to the property or a benefit
> from the property;
> (b) Appropriate the property to his or her own use or to the use of
> any person not entitled to the use of the property.

As discussed above, Plaintiff lost his legal right to possess the firearms upon

entry of the injunction on May 21, 2008.  Therefore, the City could not have knowingly

obtained the guns with the intent to deprive Plaintiff of his right or benefit to the property,

as Plaintiff had no rights during the period the City had possession of the guns.  Thus,

there is no genuine issue of material fact regarding the theft claim and the Court will

enter summary judgment as to Count VI.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant City of Boynton Beach's Motion for Summary Judgment [DE 122] is

    hereby **GRANTED**;

---

[8]  The Court notes that Plaintiff did not bring a conversion or theft claim against
PBSO.

2.      Sheriff Ric Bradshaw's Motion for Summary Judgment [DE 126] is hereby
        **GRANTED**;

3.      Plaintiff's Motion for Partial Summary Judgment [DE 128] is hereby **DENIED,
        without prejudice**;

4.      Defendant City of Boynton Beach's Motion for Leave to Amend or Correct its
        Motion for Summary Judgment [DE 147] is hereby **DENIED**.  The Court did not
        read the Amended Motion at DE 147-1;

5.      Plaintiff's Motions in Limine [DE's 179, 180 and 181] are hereby **DENIED** as
        moot;

6.      Plaintiff's Motion for Sanctions Against Defendant City of Boynton Beach for citing
        to the wrong Mutual Aid Agreement [DE 143] is hereby **DENIED**, as the Court
        was not misled;

7.      Plaintiff's Motion for Sanctions Against Defendant Ric Bradshaw, for arguing that
        the First District Court of Appeal ruled on the issue of the validity of the Mutual
        Aid Agreement [DE 144] is hereby **DENIED**.  Although Plaintiff is correct that the
        First District Court of Appeal did not rule on the validity of the Mutual Aid
        Agreement, the argument made by Defendant Bradshaw does not rise to the level
        of sanctions;

8.      Plaintiff's Second Motion for Sanctions and Motion to Strike Statement of Facts
        Against Defendant City of Boynton Beach, for including footnotes in addition to
        numbered paragraphs in its Statement of Facts [DE 145], is hereby **DENIED**;

16

9.     Defendant Bradshaw's Motions for Contempt [DE 183 and 197] are hereby

**REFERRED** to United States Magistrate Judge Barry Seltzer for appropriate

order or report and recommendation;

10.    The Court will separately enter a final summary judgment in this matter.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 25th day of August, 2011.

JAMES I. COHN
United States District Judge

Copies provided to:

counsel of record on CM/ECF

17